**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| ROBERT ZOMOLOSKY, derivatively on behalf of E.I. DU PONT DE NEMOURS AND COMPANY, | ) ) ) ) |
|                 Plaintiff, | ) ) |
|      - against - | ) ) |
| ELLEN KULLMAN, LOIS D. JULIBER, CURTIS J. CRAWFORD, RICHARD H. BROWN, MARILLYN A. HEWSON, ROBERT A. BROWN, BERTRAND P. COLLOMB, ALEXANDER M. CUTLER, WILLIAM K. REILLY, SAMUEL W. BODMAN, and JOHN T. DILLON | ) ) ) ) ) ) ) ) |
|               Defendants, | ) ) |
|      and | ) ) |
| E.I. DU PONT DE NEMOURS AND COMPANY | ) ) ) |
|        Nominal Defendant. | ) ) ) |

Civil Action No. 13-94 (SLR)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' AND NOMINAL
DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 23.1 AND
DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**</u>

*Counsel listed on following page.*

DATED: June 28, 2013

Kevin G. Abrams (ID No. 2375)
Steven C. Hough (ID No. 5834)
**ABRAMS & BAYLISS LLP**
20 Montchanin Road, Suite 200
Wilmington, DE  19807
Phone: (302) 778-1000

*Attorneys for Defendants Juliber, Crawford, R.H.
Brown, Hewson, R.A. Brown, Collomb, Cutler,
Reilly, Bodman & Dillon*

David E. Kendall
Douglas R. Marvin
Ana C. Reyes
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000

*Attorneys for Defendants Juliber, Crawford, R.H.
Brown, Hewson, R.A. Brown, Collomb & Cutler*

Charles Bachman
Edward N. Moss
**O'MELVENY & MYERS LLP**
Times Square Tower
7 Times Square
New York, NY 10036
Phone: (212) 326-2000

*Attorneys for Defendants Reilly, Bodman &
Dillon*

Michael A. Pittenger (ID No. 3212)
Donald J. Wolfe, Jr. (ID No. 285)
Jennifer C. Wasson (ID No. 4933)
**POTTER ANDERSON & CORROON LLP**
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19801
Phone: (302) 984-6136

Thomas J. Nolan
Lance E. Etcheverry
**SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP**
300 South Grand Ave, Suite 3400
Los Angeles, CA  90071
Phone: (213) 687-5000

Edward P. Welch (ID No. 671)
**SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP**
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Phone: (302) 651-3000

*Attorneys for Nominal Defendant*

Lewis H. Lazarus (ID No. 2374)
Joseph R. Slights, III (I.D. No. 2559)
Thomas E. Hanson, Jr. (I.D. No. 4102)
Corinne Elise Amato (I.D. No. 4982)
**MORRIS JAMES LLP**
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801-1494
Phone: (302) 888-6970

Evan R. Chesler
**CRAVATH, SWAINE & MOORE LLP**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Phone: (212) 474-1000

*Attorneys for Defendant Kullman*

# TABLE OF CONTENTS

TABLE OF CITATIONS ............................................................................ ii

NATURE AND STAGE OF PROCEEDINGS ......................................... 1

SUMMARY OF ARGUMENT ................................................................ 2

BACKGROUND AND STATEMENT OF FACTS ................................. 5

ARGUMENT ........................................................................................... 7

I.    THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED UNDER RULE 23.1 FOR FAILURE TO MAKE A DEMAND ON THE BOARD ........................................................................................... 7

    A.    Demand Futility Is Subject to a Heightened Pleading Standard ............... 7

    B.    The Failure to Plead Director-Specific Facts Requires Dismissal ............. 8

    C.    Plaintiff's Allegations of Board Inaction Required A Demand of the Board ........................................................................................... 9

        1.    The Directors Are Disinterested and Independent .......................... 9

        2.    The Directors Do Not Face a "Substantial Likelihood" of Liability ...................................................................................... 10

            (a)    No Substantial Threat of Liability for Stacking ............... 12

            (b)    No Substantial Threat of Liability for Sanctions Order ....................................................................................... 14

    D.    Plaintiff's Allegations of Board Action Required A Demand on the Board ........................................................................................... 14

II.    THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM ...................... 16

    A.    Plaintiff Fails to Allege Specific Conduct on the Part of Any Defendant ........................................................................................... 16

    B.    Plaintiff Fails to State a Claim Even If Collective Pleading Were Permitted ........................................................................................... 17

CONCLUSION ........................................................................................ 20

## TABLE OF CITATIONS

**CASES**                                                                 **PAGE(S)**

*In re Accuray, Inc. Shareholder Derivative Litigation*,
    757 F. Supp. 2d 919 (N.D. Cal. 2010) ................................................................. 12

*Allison ex rel. General Motors Corp. v. General Motors Corp.*,
    604 F. Supp. 1106 (D. Del. 1985), *aff'd*, 782 F.2d 1026 (3d Cir. 1985) ................................ 7

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984) ................................................................. passim

*Ash v. McCall*,
    C.A. No. 17132-CC, 2000 WL 1370341 (Del. Ch. Sept. 15, 2000) .................................... 13

*Beam ex rel. Martha Stewart Living Omnimedia, Inc.  v. Stewart*,
    845 A.2d 1040 (Del. 2004) ................................................................. 8, 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................. 4, 16

*In re Bridgeport Holdings, Inc.*,
    388 B.R. 548 (Bankr. D. Del. 2008) ................................................................. 17

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011) ................................................................. 18

*In re Caremark International Inc. Derivative Litigation*,
    698 A.2d 959 (Del. Ch. 1996) ................................................................. passim

*In re Citigroup Inc. Shareholder Derivative Litigation*,
    964 A.2d 106 (Del. Ch. 2009) ................................................................. passim

*In re Citigroup Inc. Shareholders Litigation*,
    C.A. No. 19827-VCL, 2003 WL 21384599 (Del. Ch. June 5, 2003),
    *aff'd*, 839 A.2d 666 (Del. 2003) ................................................................. 2

*Desimone v. Barrows*,
    924 A.2d 908 (Del. Ch. 2007) ................................................................. passim

*Freedman v. Adams*,
    C.A. No. 4199-VCN, 2012 WL 1345638 (Del. Ch. Mar. 30, 2012) ,
    *aff'd*, 58 A.3d 414 (Del. 2013) ................................................................. 15

*In re Google, Inc. Shareholder Derivative Litigation*,
   No. 11-4248 PJH, 2012 WL 1611064 (N.D. Cal. May 8, 2012) ........................................8

*Guttman v. Huang*,
   823 A.2d 492 (Del. Ch. 2003)........................................................................................3

*Highland Legacy Ltd. v. Singer*,
   C.A. No. 1566-VCL, 2006 WL 741939 (Del. Ch. Mar. 17, 2006)........................................8

*In re Intel Corp. Derivative Litigation*,
   621 F. Supp. 2d 165 (D. Del. 2009) ..............................................................................9, 16

*In re IT Group Inc.*,
   C.A. No. 02-10118 (MFW), C.A. No. 04-1268-KAJ,
   2005 WL 3050611 (D. Del. Nov. 15, 2005)....................................................................16

*Kamen v. Kemper Financial Services, Inc.*,
   500 U.S. 90 (1991) ......................................................................................................2, 7

*Kanter v. Barella*,
   489 F.3d 170 (3d Cir. 2007) ........................................................................................2, 7

*Levine v. Smith*,
   591 A.2d 194 (Del. 1991) ..............................................................................................7

*Levine v. Smith*,
   C.A. No. 8833-VCJ, 1989 WL 150784 (Del. Ch. Nov. 27, 1989, revised May 21,
   1990), *aff'd*, 591 A.2d 194 (Del. 1991) ........................................................................8

*MCG Capital Corp. v. Maginn*,
   C.A. No. 4521-CC, 2010 WL 1782271 (Del. Ch. May 5, 2010)........................................13

*Morrone ex rel. Arotech Corp. v. Erlich*,
   No. 09 CV 1910, 2011 WL 1322085 (E.D.N.Y. Mar. 31, 2011)........................................18

*Pogostin v. Rice*,
   480 A.2d 619 (Del. 1984) ..............................................................................................9

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993) ........................................................................................3, 9, 10

*Rattner v. Bidzos*,
   C.A. No. 19700-VCN, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) ............................9, 12

*Seni ex rel. Ciber, Inc. v. Peterschmidt*,
   No. 12-cv-00320-REB-CBS, 2013 WL 1191265 (D. Colo. Mar. 22, 2013)........................17

*S. Freedman & Co. v. Raab,*
    180 F. App'x 316 (3d Cir. 2006) ......................................................................... 1

*Smith v. Van Gorkom,*
    488 A.2d 858 (Del. 1985) ................................................................................. 18

*South v. Baker,*
    C.A. No. 7294-VCL, 2012 WL 6114952 (Del. Ch. Sept. 25, 2012) .............................. passim

*Stone ex rel. AmSouth Bancorporation v. Ritter,*
    911 A.2d 362 (Del. 2006) ......................................................................... 4, 11, 18

*Taylor v. Kissner,*
    893 F. Supp. 2d 659 (D. Del. 2012) .................................................................. 10

*In re Walt Disney Co. Derivative Litigation,*
    906 A.2d 27 (Del. 2006) ......................................................................... 11, 18

*White v. Panic,*
    783 A.2d 543 (Del. 2001) ..................................................................... 7, 15, 20

*Wood v. Baum,*
    953 A.2d 136 (Del. 2008) ..................................................................... 12, 16

**STATUTES**

8 Del. C. § 102(b)(7) ......................................................................... 10, 15

Fed. R. Civ. P. 23.1(b)(3) ......................................................................... passim

## NATURE AND STAGE OF PROCEEDINGS[1]

On January 16, 2013, Plaintiff Robert Zomolosky ("Plaintiff") filed a Verified Derivative Complaint ("Complaint") for the ostensible benefit of Nominal Defendant E. I. du Pont de Nemours and Company ("DuPont"), against the board of directors ("Board") and certain officers and former directors ("Individual Defendant(s)" or "Defendants").  (D.I. 1.)  On March 18, 2013, Plaintiff filed a Verified Amended Derivative Complaint ("Amended Complaint").   (D.I. 9.) After DuPont and Defendants filed a Motion to Dismiss (D.I. 23-26), Plaintiff sought to file yet another amended complaint.  DuPont and Defendants did not object, and Plaintiff filed a Verified Second Amended Derivative Complaint ("SAC") on May 31, 2013.[2]  (D.I. 28.)

Plaintiff's claims center on an adverse trial verdict in a patent lawsuit filed by Monsanto Company ("Monsanto"), a DuPont competitor, in the Eastern District of Missouri (the "Missouri Litigation"), which has since been appealed and settled.  (*Id.* ¶ 2.)  DuPont and Defendants move to dismiss the SAC because Plaintiff, unlike other shareholders, did not make a demand on the Board before filing his derivative suit (*id.* ¶ 112) and, despite now being afforded three opportunities, does not and cannot plead particularized facts excusing demand as futile under Rule 23.1(b)(3).[3]  Plaintiff presents no basis to divest the Board of its authority to govern

---

[1] Unless noted, emphasis in quotations is added and internal citations and quotation marks are omitted.  "RJN Ex. __" refers to the concurrently filed Request for Judicial Notice.

[2] The "Board" and "Director(s)" refer to the directors serving when the Complaint was filed, to whom a demand should have been made, including non-parties Eleuthere I. du Pont, whom Plaintiff dropped as a defendant in the Amended Complaint to attempt to establish diversity jurisdiction (D.I. 9), and Lee M. Thomas and Lamberto Andreotti, whom Plaintiff dropped as defendants in the SAC (D.I. 28).  Further, despite being on notice of the pleading defect from the first motion to dismiss (D.I. 24 at 2), Plaintiff alleges where DuPont's "corporate headquarters are located" (D.I. 28 ¶ 16) but not "its principal place of business," and thus has still not properly alleged the basis of this Court's subject matter jurisdiction.  *See, e.g., S. Freedman & Co. v. Raab*, 180 F. App'x 316, 320 (3d Cir. 2006) (complaint dismissed under Rule 12(b)(1)).

[3] Further, in his "race to the courthouse," Plaintiff did not first investigate his claims with any of the "tools at hand," such as a books and records inspection, which Delaware courts emphasize is

1

DuPont's affairs and determine whether the litigation is in the corporation's best interests.

The Individual Defendants named in the SAC (but not DuPont) also seek dismissal under Rule 12(b)(6). Plaintiff's speculative allegations about unspecified group conduct and hindsight conclusions about litigation results fail to state a claim upon which relief can be granted.

## SUMMARY OF ARGUMENT

**1.      Demand Futility Is Subject to a Heightened Pleading Standard [Part I-A, p. 7].** Where a pre-suit demand on the Board is not made, the complaint must "state with particularity . . . the reasons for . . . not making the effort." Fed. R. Civ. P. 23.1(b)(3). This heightened pleading standard implements the substantive requirement that a shareholder respect the authority of the board of directors to make decisions for the company. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96-99 (1991); *Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007).

**2.      The SAC Does Not Plead Director-Specific Facts [Part I-B, p. 8].** The SAC should be dismissed for failing to allege "facts specific to each director, demonstrating that at least half of them could not have exercised disinterested business judgment in responding to a demand." *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007). Despite a third attempt to plead his case, Plaintiff asserts only Board-wide allegations untethered to the individual Directors, which are insufficient to survive dismissal. *E.g.*, *Citigroup*, 2003 WL 21384599, at *1, 3.

---

critical to a complaint that adequately alleges demand excusal. *In re Citigroup Inc. S'holders Litig.*, 2003 WL 21384599, at *1, 3 (Del. Ch. June 5, 2003), *aff'd*, 839 A.2d 666 (Del. 2003). Plaintiff's counsel itself was recently admonished for the same pleading approach: "A plaintiff who hurries to file a *Caremark* claim after the announcement of a corporate trauma behaves *contrary to the interests of the corporation but consistent with the desires of the filing law firm* to gain control of (or a role in) the litigation. The *natural and logical inference* from this recurring scenario is that the plaintiff is serving the interests of the law firm, rather than those of the corporation on whose behalf the plaintiff ostensibly seeks to litigate." *South v. Baker*, 2012 WL 6114952, at *24 (Del. Ch. Sept. 25, 2012). Indeed, another shareholder has made a request to inspect the books and records and two other shareholders have made demands, for which former Chancellor William B. Chandler has been retained by the Board as counsel for its examination. *See* RJN Exs. C, D, E.

3.      **The Allegations of Board Inaction Required a Demand on the Board [Part I-C, p. 9].**

Where, as here, Board *inaction* is challenged, the *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993), test for demand futility applies.   *Rales* requires particularized factual allegations that "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id*. at 934.   A plaintiff must demonstrate that either: (1) the underlying conduct being challenged renders some directors interested and, if so, that other directors could not still act independently; or (2) at least half of the directors face a "substantial likelihood of personal liability" that compromises the ability to act impartially on the demand. *Desimone*, 924 A.2d at 928-29 (citing *Guttman v. Huang*, 823 A.2d 492, 501-03 (Del. Ch. 2003)).

a.      **The Directors Are Disinterested and Independent [Part I-C(1), p. 9].**   Plaintiff does not plead facts raising a reasonable doubt that the Directors are disinterested or independent.   A director is not interested in a decision unless the director receives a material personal benefit not equally shared by shareholders or the decision has a materially detrimental impact on the director but not on the corporation. *Rales*, 634 A.2d at 936.   The SAC pleads no such facts.   A director is not rendered interested merely by being named a defendant. *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984).   A lack of independence requires particularized facts showing the director was beholden to a controlling person or so influenced as to negate his or her discretion. *Id*.   The SAC pleads no such particularized facts.

b.      **The Directors Do Not Face a Substantial Likelihood of Liability [Part I-C(2), p. 10].**   Plaintiff cannot establish a substantial likelihood of personal liability because he fails to meet the strict standard under *Caremark* for a "failure of oversight" claim, which requires particularized allegations (i) of "actual director involvement in a decision or series of decisions that violated positive law"; (ii) "that the board consciously failed to act after learning about

3

evidence of illegality—the proverbial 'red flag'"; or (iii) of a breach of "the board's obligation to adopt internal information and reporting systems." *South*, 2012 WL 6114952, at *9; *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996). These require "a showing of bad faith conduct." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006). Of the limited number of ways to plead conduct creating a "substantial threat of personal liability," Plaintiff attempts to plead only that the Board was presented with, but allegedly chose to ignore, alleged "red flags." *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 124 (Del. Ch. 2009). Plaintiff contends that conduct by DuPont's management led to adverse results in the Missouri Litigation and that the Board failed to prevent or redress such conduct. (D.I. 28 ¶ 127.) Plaintiff's conclusory allegations do not establish a substantial threat of "red flag" liability under *Caremark*.

**4.     The Allegations of Board Action Required a Demand on the Board [Part I-D, p. 14].**
Where a plaintiff challenges board *action*, the two-step test of *Aronson* applies—a plaintiff must plead particularized facts that raise a reasonable doubt that (1) the directors are disinterested and independent, or (2) the challenged transaction was the product of a valid exercise of business judgment. *Aronson*, 473 A.2d at 814. Plaintiff's allegations that the Board's approvals of Ms. Kullman's compensation after the December 2011 Order (D.I. 28 ¶ 132), and DuPont's decision to enter into licensing agreements with Monsanto, which included mutual resolution of their competing litigation disputes (*id.* ¶¶ 95-100), do not excuse demand under the *Aronson* test.

**5.     The SAC Should Be Dismissed under Rule 12(b)(6) for Failure to State a Claim [Part II, p. 16].** Plaintiff also fails to state a claim against the Individual Defendants. Plaintiff pleads almost no facts against the Individual Defendants, but asserts in conclusory fashion that all of them, as a group, must have known that DuPont allegedly was engaged in misconduct. Plaintiff's mere speculation cannot substitute for the facts required to be pled, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and is not actionable under Delaware law. *Citigroup*, 964

4

A.2d at 124; *Desimone*, 924 A.2d at 940.  Nor is the allegation that a bad outcome occurred sufficient to establish bad faith or *Caremark* liability.

<u>**BACKGROUND AND STATEMENT OF FACTS**</u>

In 2006, DuPont announced that its subsidiary Pioneer Hi-Bred International, Inc., was developing a genetic trait called Optimum™ GAT™ ("Optimum GAT") for soybeans.  (D.I. 28 ¶ 61.)  With Optimum GAT, DuPont aspired to produce superior crop yields and broader herbicide resistance than Roundup® Ready® ("Roundup Ready"), a trait DuPont licensed from Monsanto that also is resistant to the common herbicide glyphosate.  (*Id.* ¶¶ 45, 55, 62.)  Testing revealed that combining, or "stacking," the Optimum GAT genetic trait with the Roundup Ready genetic trait produced soybeans that performed better than either trait alone.  (*Id.* ¶ 71.)

On May 4, 2009, Monsanto commenced the Missouri Litigation, alleging that DuPont's stacking breached the Roundup Ready licensing agreement and infringed its patent.  (*Id.* ¶ 82.) DuPont countered that (i) the parties' licensing agreement permitted stacking; (ii) contract reformation was needed if the court found otherwise; (iii) the applicable Roundup Ready patent was invalid and unenforceable; and (iv) Monsanto's claimed licensing restrictions violated antitrust laws.  (*See id.* ¶ 83.)  On December 21, 2011, the Missouri court sanctioned DuPont for maintaining that it subjectively believed it could stack Optimum GAT with Roundup Ready because the court concluded that certain privileged emails that DuPont voluntarily produced contradicted that position.  (*Id.* ¶¶ 88-89 & Ex. A at 24-25.)  As a result, the Missouri court struck certain of DuPont's affirmative defenses and counterclaims seeking contract reformation and awarded fees.  (*Id.* Ex. A at 32-34.)

On June 6, 2012, the court granted partial summary judgment to Monsanto, ruling that "[t]he license grant does not *expressly* allow stacking glyphosate-resistant traits, nor does it *expressly* prohibit stacking glyphosate-resistant traits," but "when the license grant is read in

5

conjunction" with other provisions, "it is clear that the licensee is prohibited from stacking glyphosate-resistant traits." (D.I. 9 Ex. B at 9.)  On August 1, 2012, a jury found that DuPont had willfully infringed a valid patent, and, although DuPont never sold a single Optimum GAT soybean, awarded damages of $1 billion.  (D.I. 28 ¶ 2.)

Plaintiff alleges that there was a lack of evidence supporting DuPont's position that it could stack.  (*Id.* ¶ 127.)  Without acknowledging that the December 2011 Order does not mention the Board and without alleging any facts actually connecting Defendants to the Order, Plaintiff avers that upon learning of Monsanto's position that stacking was not permitted, the Board should have acted to avoid harm but instead "dug in and allowed management to defraud a District Court." (*Id.* ¶ 119.)  He also asserts that the Board improperly increased Ms. Kullman's salary after the sanctions Order and has failed to adopt a "Clawback Policy." (*Id.* ¶¶ 132, 133.)

Plaintiff maintains that Defendants breached their "fiduciary duty to act loyally and with due care." (*Id.* ¶ 136.)  He does not allege facts about any particular Director's alleged knowledge, actions or inactions, and he concedes that the Board established a "reasonable system of controls designed to inform them if DuPont is not being operated in conformity with applicable law." (*Id.* ¶ 139.)  Plaintiff asserts that DuPont's patent infringement was knowingly wrongful and speculates that this "would have" been brought to the Board's attention.[4]  (*Id.* ¶¶ 102-106, 108-109.)

Finally, while criticizing DuPont for not resolving its dispute with Monsanto (*see, e.g., id.* ¶¶ 41, 128), Plaintiff attacks DuPont's recent business deal with Monsanto, which comprises both technology licensing agreements and resolution of competing legal disputes, including the

---

[4] The SAC repeatedly speculates about the Board's knowledge.  *See, e.g.,* D.I. 28 ¶ 57 ("would have been known to DuPont's Board"); ¶ 81 ("[t]his public filing could not have been overlooked"); ¶ 115 ("it may be safely assumed"); ¶ 119 ("could not have been overlooked").

6

Missouri Litigation verdict and DuPont's then-pending antitrust claims.   (*Id.* ¶¶ 95-100.) Plaintiff questions the wisdom of the licensing agreements, and offers bald speculation about the relative price and value of the overall agreement, conjecture about the terms of the confidential agreement, unfounded scientific and market predictions, and accusations about the environmental effects of the technology.   (*See id.*)

## ARGUMENT

### I.   THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED UNDER RULE 23.1 FOR FAILURE TO MAKE A DEMAND ON THE BOARD

#### A.   Demand Futility Is Subject to a Heightened Pleading Standard

The demand requirement is no mere rule of procedure, but an "important stricture of substantive law." *Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991).   A shareholder who files a derivative suit is not pursuing a personal claim on his own behalf, but one alleged as belonging to the corporation. *Kamen*, 500 U.S. at 95.   Rule 23.1 implements the "cardinal precept" of Delaware corporation law that the "directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson*, 473 A.2d at 811; *Kanter*, 489 F.3d at 176 (applying federal pleading rules and state substantive law to determine demand futility).   Thus, "the decision to initiate litigation should be made by the board of directors." *Kamen*, 500 U.S. at 101.

A plaintiff who fails to make a pre-suit demand must "state with particularity . . . the reasons for . . . not making the effort."[5] Fed. R. Civ. P. 23.1(b)(3).   The exacting requirement for pleading "particularized" facts establishing futility gives teeth to the powerful presumption of the business judgment rule. *Aronson*, 473 A.2d at 812; *White v. Panic*, 783 A.2d 543, 551 (Del. 2001).   The business judgment rule presumes a board will evaluate whether litigation should

---

[5] The Rule 23.1 particularity requirement "is a marked departure from the 'notice' pleading philosophy of the Federal Rules of Civil Procedure." *Allison v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1112 (D. Del. 1985), *aff'd*, 782 F.2d 1026 (3d Cir. 1985).   It aims to "police the police" by checking overzealous shareholders at the courthouse door. *Id.*

commence "on an informed basis, in good faith and in the honest belief that the action taken [will be] in the best interests of the company." *Aronson*, 473 A.2d at 812. As a result, a plaintiff ordinarily must make a demand on the board before filing suit on behalf of a corporation. *See id*.

A motion to dismiss for failure to make a demand is antecedent to a merits analysis of the putative causes of action. Its purpose is "to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." *Levine v. Smith*, 1989 WL 150784, at *5 (Del. Ch. Nov. 27, 1989, revised May 21, 1990), *aff'd*, 591 A.2d 194 (Del. 1991). "The test of futility is whether at the time of the filing of the suit a majority of the directors could have impartially considered and acted upon the demand." *Highland Legacy Ltd. v. Singer*, 2006 WL 741939, at *4 (Del. Ch. Mar. 17, 2006).

### B.   The Failure to Plead Director-Specific Facts Requires Dismissal

"[A] derivative complaint must plead facts *specific to each director*, demonstrating that at least half of them could not have exercised disinterested business judgment in responding to a demand." *Desimone*, 924 A.2d at 943 (citing *Beam v. Stewart*, 845 A.2d 1040, 1050-51 (Del. 2004)). "Delaware law does not permit the wholesale imputation of one director's knowledge to every other for demand excusal purposes." *Id.*; *see also In re Google, Inc. S'holder Deriv. Litig.*, 2012 WL 1611064, at *7 (N.D. Cal. May 8, 2012). Here, the only director-specific allegations pled by Plaintiff are the names, titles, committee assignments, and domiciles of the Directors (D.I. 28 ¶¶ 17-27), and a few references to Ms. Kullman (*e.g.*, *id.* ¶¶ 120, 122). Indeed, in the entire section entitled "DEMAND IS EXCUSED AS FUTILE," Plaintiff pleads facts about only one Director by name other than the recitation of a few committee assignments. (*Id.* ¶¶ 111-134.) The SAC is devoid of any particularized futility allegations concerning each individual Director and should be dismissed on this basis alone. *Desimone*, 924 A.2d at 943 ("knowledge on the part of any one board member can[not] be imputed to other board members.").

8

C.     **Plaintiff's Allegations of Board Inaction Required A Demand of the Board**

Even if given credence, Plaintiff's non-individualized allegations could not and do not establish demand futility.  Where, as here, a plaintiff challenges a failure to act, the *Rales* test for demand futility applies.  *Rales*, 634 A.2d at 933-34; *In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 173 (D. Del. 2009) (*Rales* applies even where a plaintiff attempts to style *inaction* allegations as a conscious *decision* not to act).  Under *Rales*, demand is excused only if "the particularized factual allegations . . . create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."  634 A.2d at 934.  Plaintiff must plead

> particularized facts sufficient to demonstrate that either (1) the underlying conduct being challenged renders any of the directors "interested" and, if so, whether any of the other directors are compromised in their ability to act independently of the interested directors; or (2) at least half of the directors face a sufficiently *substantial threat of personal liability* as to the conduct alleged in the complaint to compromise their ability to act impartially on a demand.

*Desimone*, 924 A.2d at 928.  The SAC does not satisfy this burden.

1.     **The Directors Are Disinterested and Independent**

Plaintiff fails to allege that a majority of the Directors (or any Director for that matter) is interested or lacks independence regarding a demand.  A director is not interested in a decision unless it causes the director to receive a material personal benefit not equally shared by shareholders or the decision has a materially detrimental impact on the director but not the corporation.  *Rales*, 634 A.2d at 936; *accord Rattner v. Bidzos*, 2003 WL 22284323, at *8 (Del. Ch. Sept. 30, 2003).  Directors are not "interested" based on their status as defendants in the putative derivative litigation on the ground that they are deciding whether to sue themselves.  *See Aronson*, 473 A.2d at 815; *Pogostin v. Rice*, 480 A.2d 619, 625 (Del. 1984) ("plaintiffs' bootstrap allegations of futility, based on . . . a reluctance by directors to sue themselves, were

9

laid to rest in *Aronson*").  If that were the law, any derivative plaintiff could circumvent the Rule 23.1 demand requirement simply by naming all directors as defendants.[6]

## 2. The Directors Do Not Face a "Substantial Likelihood" of Liability

Because Plaintiff fails to establish that a majority of Directors is interested or lacks independence, he must allege with particularity that a majority of the Board faces "a 'substantial likelihood' of personal liability by complying with his demand to pursue litigation." *See Taylor v. Kissner*, 893 F. Supp. 2d 659, 669 (D. Del. 2012) (citing *Rales*, 634 A.2d at 936). "Without a substantial threat of director liability, a court has no reason to doubt the board's ability to address the corporate trauma and evaluate a related demand." *South*, 2012 WL 6114952, at *9.[7]

A "mere threat" of personal liability does not render a director unable to consider a demand. *Rales*, 634 A.2d at 936.  Rather, Plaintiff must show that a majority of Directors face a "substantial likelihood" of liability.  *Id.*  Here, Plaintiff asserts a "failure of oversight" claim under *Caremark*, 698 A.2d at 971, which requires alleging (i) "with particularity actual director involvement in a decision or series of decisions that **violated positive law**"; (ii) "that the board

---

[6] The only allegation remotely related to independence is that one of the Directors also serves as an officer (CEO Ellen Kullman).  (D.I. 28 ¶ 17.)  This allegation is insufficient to show that Ms. Kullman, let alone a majority of the Board who served with her, lacks independence. *See Beam*, 845 A.2d at 1051 ("that [Martha] Stewart and the other directors moved in the same circles, attended the same weddings, developed business relationships before joining the board, and described each other as 'friends,' even when coupled with [her] 94% voting power, are insufficient, without more, to rebut the presumption of independence. They do not provide a sufficient basis from which reasonably to infer [the directors] may have been beholden to [her]").

[7] Further, to the extent Plaintiff asserts a claim for breach of the duty of care (D.I. 28 ¶ 136), he must overcome the exculpatory provision in DuPont's charter permitted by 8 Del. C. § 102(b)(7), which absolves the Directors of personal liability for breaches of fiduciary duty, except those based on fraudulent, illegal, or bad faith conduct.  (RJN Ex. B, art. IX.)  A "substantial likelihood of personal liability" cannot rest on exculpated conduct because the director faces *no* likelihood of personal liability in such case.  Moreover, Plaintiff cannot overcome § 102(b)(7) because he fails to "plead the requisite particularized facts that demonstrate that the directors acted with scienter, i.e., that they had 'actual or constructive knowledge' that their conduct was legally improper." *Citigroup*, 964 A.2d at 125.

consciously failed to act after learning about evidence of illegality—the proverbial '**red flag**'"; or (iii) breach of "the board's obligation to adopt internal information and reporting systems." *South*, 2012 WL 6114952, at *9. A "failure of oversight" claim is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Caremark*, 698 A.2d at 967. "[A] showing of bad faith conduct . . . is essential to establish director oversight liability." *Stone*, 911 A.2d at 370. Only an "intentional dereliction of duty, a conscious disregard for one's responsibilities" or an intent to harm the company constitutes "bad faith" under Delaware law. *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 64-68 (Del. 2006).

Plaintiff has failed to plead particularized facts sufficient to excuse demand under these stringent standards. He has not pled particular, actual director involvement in any decision violating positive law,[8] and he has conceded that the Board has implemented a "reasonable system of controls designed to inform them if DuPont is not being operated in conformity with applicable law."[9] (D.I. 28 ¶ 139.) Thus, Plaintiff must plead with particularity that the Board was presented with, but consciously chose in bad faith to ignore, "red flags." *See Citigroup*, 964 A.2d at 123 & n.47 (requiring "that the directors acted with the state of mind traditionally used to

---

[8] *See Desimone*, 924 A.2d at 938 (demand is not excused for violation of positive law where "[t]he complaint pleads no facts to suggest that any member of the board was involved in the details of the [stock option grants] in any way, much less that the board was driving the process"). Alleged behavior of *management* does not support an inference of Board involvement in illegality. *See South*, 2012 WL 6114952, at *10 ("Under *Stone*, *Guttman*, and *Caremark*, it is not reasonable to infer that the Board acted in bad faith based on references to 'management[.]'"). The December 2011 Order is silent about the Board. (D.I. 28 Ex. A.)

[9] A successful claim that directors breached the duty to maintain an adequate oversight system must allege a "sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system." *Caremark*, 698 A.2d at 971. Plaintiff must establish that the Board "*knew that internal controls were inadequate*, that the inadequacies could leave room for illegal or materially harmful behavior, and that the board chose to do nothing about the control deficiencies that it knew existed." *Desimone*, 924 A.2d at 940 (citing *Stone*, 911 A.2d at 373). Plaintiff concedes the exact opposite. (D.I. 28 ¶ 139.)

11

define the mindset of a disloyal director—bad faith"). Red flags "are only useful when they are either waved in one's face or displayed so that they are visible to the careful observer." *Wood v. Baum*, 953 A.2d 136, 143 (Del. 2008). Plaintiff does not approach this high standard.

(a) No Substantial Threat of Liability for Stacking

*First*, Plaintiff alleges that the Board "would have followed [Optimum GAT's] development very closely" because "DuPont's ability to develop and commercialize [it] was crucial to its ability to compete and thrive" given that "Monsanto was dominating the modified seed market." (D.I. 28 ¶¶ 60, 114.) Plaintiff alleges that general information would have been reported to the Board (*see* ¶¶ 120-123), but that is insufficient to show that the Directors were presented with red flags, much less that they consciously and in bad faith failed to respond to them.[10] *See Wood*, 953 A.2d at 142 (allegations without "specific conduct in which each defendant 'knowingly' engaged, or that the defendants knew that such conduct was illegal" are insufficient).[11] Even if the Directors were familiar with the Optimum GAT research, that does not mean they knew that stacking was impermissible or the patent was valid and enforceable, or consciously, and in bad faith, declined to act after presented with such "red flags."[12]

---

[10] Courts consistently and squarely reject as insufficient allegations, like Plaintiff's here, that matters would have been brought to the Board's attention based on oversight policies, company ethics codes, and the general access to information. *See Citigroup*, 964 A.2d at 135 ("[D]irector liability is not measured by the aspirational standard established by the internal documents detailing a company's oversight system."). "[A]n allegation that the underlying cause of a corporate trauma falls within the delegated authority of a board committee does not support an inference that the directors on that committee knew of and consciously disregarded the problem." *South*, 2012 WL 6114952, at *11 (collecting cases); *see also* D.I. 28 ¶¶ 102-106, 108-109.

[11] *See also South*, 2012 WL 6114952, at *11 ("the complaint nowhere alleges anything that the directors were told about the incidents, what the Board's response was, or even that the incidents were connected in any way"); *Rattner*, 2003 WL 22284323, at *13 (no demand futility where plaintiff failed to allege facts to draw the inference that irregularities came to board's attention).

[12] *See, e.g., In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919, 928 (N.D. Cal. 2010) ("Plaintiffs argue that, because the information about the misconduct in question pertains to a

12

*Second*, Plaintiff alleges that the "Board could not have believed that DuPont was justified in stacking . . . because there was no evidence it had such rights and the evidence that was available to the Board clearly showed that DuPont did not have such rights."[13] (D.I. 28 ¶ 127).   But this flatly misstates Plaintiff's burden: Plaintiff must plead particularized facts showing that the Board ignored red flags; he cannot proceed by alleging the absence of green flags.   Plaintiff alleges no facts that the Board knew of the purported lack of stacking rights, or any specifics of the basis for Monsanto's legal conclusions.   Even assuming *arguendo* that DuPont had little support for its interpretation of the license, Plaintiff fails to allege that the company's defenses (such as patent invalidity and Monsanto's antitrust violations) were meritless.   Plaintiff merely asserts that "the Board, despite having full authority and legal duty to do so, did not seek advice from objective and independent counsel who could render opinions on whether DuPont's actions in connection with Roundup Ready constituted patent and license violations."   (*Id.* ¶ 130.)   This is plainly insufficient.[14]

---

company's core business, courts impute knowledge of that information to each board member. However, in derivative actions, courts have repeatedly held that a plaintiff must allege more than that Directors should have known or must have known about matters relating to the corporation's 'core business.'") (applying Delaware law).

[13] Plaintiff points to three court orders in the Missouri Litigation—two granting summary judgment to Monsanto on interpretation of the license agreement and one rejecting a DuPont defense under the Hatch-Waxman Act (*see* D.I. 28 ¶ 87)—to argue that DuPont's position in the litigation was meritless and that, because counsel presumably reported to the Board concerning the litigation, the Board would have been aware of the lack of merit in DuPont's positions.   (*See id.* ¶¶ 119, 127.)   But Plaintiff alleges no facts to support the conclusory assertion that losing litigation disputes at the trial court level means a party's case is frivolous.

[14] The Board is entitled to rely on reports from counsel.   No liability exists where "the [b]oard appears to have been informed by experts that the company's practices while contestable, were lawful" and "[t]here is no evidence that reliance on such reports was not reasonable." *Caremark*, 698 A.2d at 971; *MCG Capital Corp. v. Maginn*, 2010 WL 1782271, at *17 n.103 (Del. Ch. May 5, 2010) (board is "entitled to rely in good faith on reports or statements presented to them by the corporation's officers or employees, including general counsel"); *Ash v. McCall*, 2000 WL 1370341, at *9 (Del. Ch. Sept. 15, 2000) (board can rely on advisors providing "green flags" in

*Third*, Plaintiff cites as purported red flags two statements by Monsanto—an SEC Form 10-Q opining that Monsanto did not think DuPont's stacking was permitted (*id.* ¶ 118) and a request, in the middle of the litigation, for DuPont's Board to investigate its company (*id.* ¶ 85). Plaintiff, however, does not explain why a request from a "bitter rival[]" (*id.* ¶ 36) and litigation adversary would or should have been dealt with in any way other than by the Company's counsel in the course of legal proceedings.  The allegations certainly provide no basis to conclude that the Board "was then duty-bound to act to avoid the later harms, and could have done so," but instead "dug in and allowed management to defraud a District Court."  (D.I. 28 ¶ 119.)[15]

<h4 style="text-align:center">(b)   No Substantial Threat of Liability for Sanctions Order</h4>

Plaintiff alleges the December 2011 Order shows that DuPont was aware it did not have the right to stack and that DuPont committed a fraud on the Missouri court.  (*Id.* ¶¶ 141-144.) However, the Order makes no findings with respect to the Directors (*id.* Ex. A), and the Order's findings relating to non-Directors are not imputed.  *See South*, 2012 WL 6114952, at *10 ("it is not reasonable to infer that the Board acted in bad faith based on references to 'management'"). Plaintiff does not (and cannot) allege that the Board had any role in the activity that gave rise to the Order.  There are no facts pleaded that the Board knew of or reviewed the relevant pleadings, emails, and testimony on which the court rested its ruling.

### D.   Plaintiff's Allegations of Board Action Required A Demand on the Board

Where a plaintiff challenges board *action*, the two-step test of *Aronson* applies—a

---

the face of "red flags").  Here, Plaintiff does not allege that the Board could not rely on its legal counsel, consciously ignored "red flags" from counsel, or that it relied on counsel in bad faith.

[15] Plaintiff also asserts that the Board knew that the infringement was wrongful because due diligence during the acquisition of Pioneer over ten years ago likely would have identified other unrelated litigation between Monsanto and DuPont in the 1990s. (D.I. ¶¶ 124-127.) This convoluted argument is a non-sequitur and, in all events, cannot serve as the basis of the substantial threat of personal liability necessary for demand to be excused.

plaintiff must plead particularized facts that raise a reasonable doubt that (1) the directors are disinterested and independent, or (2) the challenged transaction was the product of a valid exercise of business judgment. *Aronson*, 473 A.2d at 814.

Plaintiff challenges the Board's approval of the DuPont's business decision to enter into licensing agreements with Monsanto, which included mutual resolution of their competing litigation disputes. (D.I. 28 ¶¶ 95-100.)  Under the settlement, (i) DuPont is not required to pay the $1 billion verdict; (ii) the parties entered into a new, broader licensing agreement; (iii) Monsanto dismissed its breach of contract and patent claims; and (iv) DuPont dismissed its antitrust claims (which had yet to be tried) and forfeited its appellate rights, except as to the December 2011 Order. (RJN Ex. A.)  If Plaintiff is asserting liability for approving the agreement, his allegations do not refute the Directors' ability to consider the demand. *See, e.g., White*, 783 A.2d at 552-53 ("The decision to approve the settlement of a suit against the corporation is entitled to the same presumption of good faith as other business decisions taken by a disinterested, independent board.").  Indeed, Plaintiff's allegations questioning the wisdom of the Board's approval illustrate the legal and policy justification behind the business judgment rule.  The suggestion that the Board cannot consider a demand after entering a business deal or settling competing lawsuits is implausible, and not supported in law.[16]

---

[16] Plaintiff also challenges the Board's approval of Ms. Kullman's compensation after the December 2011 Order.  (D.I. 28 ¶¶ 132.)  But that allegation does not excuse demand under the *Aronson* test either.  There are no pleaded facts that the Directors were "beholden to [Ms. Kullman as a] controlling person or so under [her] influence that their discretion would be sterilized" regarding that decision. *Freedman v. Adams*, 2012 WL 1345638, at *6 (Del. Ch. Mar. 30, 2012) (citing *Aronson*, 473 A.2d at 816), *aff'd*, 58 A.3d 414 (Del. 2013).  Plaintiff also has not alleged facts that the decision on Ms. Kullman's compensation is not protected by the business judgment rule or subject to the § 102(b)(7) exculpatory provision in DuPont's Charter.

15

II.    **THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM**

The SAC should also be dismissed under Rule 12(b)(6) because Plaintiff has not stated a claim against any Individual Defendant.  Plaintiff pleads no facts against the Individual Defendants other than their names and roles at DuPont, and instead asserts in conclusory fashion that all of them, as a group, must have known that DuPont was allegedly engaged in misconduct. Moreover, the SAC is rife with assumptions and unsupported conditional statements.  (*E.g.*, D.I. 28 ¶¶ 60, 103, 122, 127.)  Mere speculation, however, cannot substitute for the facts that Plaintiff is required to plead.  *See Twombly*, 550 U.S. at 555.  Plaintiff's allegations are no more than an unsupported, hindsight attempt to equate a bad litigation outcome with bad faith.  Such allegations are not actionable.  *Citigroup*, 964 A.2d at 124; *Desimone*, 924 A.2d at 940.

A.    **Plaintiff Fails to Allege Specific Conduct on the Part of Any Defendant**

Despite its expanded length, the SAC lacks what the law requires—pleaded facts supporting the claim that each Individual Defendant breached his or her fiduciary duties.  In fact, the SAC says *nothing* about most of the Individual Defendants other than to list each one's name, state of residence, and general role at DuPont, and to assert that each signed certain securities filings.[17]  (D.I. 28 ¶¶ 17–27, 113.)  Such threadbare allegations are insufficient to state a claim.  *See In re IT Group Inc.*, 2005 WL 3050611, at *9 (D. Del. Nov. 15, 2005) (dismissing duty of loyalty claim where complaint alleged only officer's "residence and position with the company").  Plaintiff's references to Ms. Kullman (D.I. 28 ¶¶ 85, 113, 120-122, 125, 132) are also insufficient because he pleads no facts that she knew about or engaged in any misconduct.

Plaintiff's attempt to graft the Individual Defendants onto his generalized allegations by

---

[17] Execution of financial reports, without additional factual support, is insufficient to state a claim of bad faith.  *See Wood*, 953 A.2d at 142; *see also Intel*, 621 F. Supp. 2d at 174.

referring to them collectively as "Defendants" or "Director Defendants" or the "Board" and attributing breaches to the group (*e.g.*, *id.* ¶ 113) is insufficient under Rule 8. *Seni ex rel. Ciber, Inc. v. Peterschmidt*, 2013 WL 1191265, at *3 (D. Colo. Mar. 22, 2013) ("[G]roup pleading does not provide the specificity required by *Twombly*, *Iqbal*, and related cases. Such general group pleading is not sufficient to present a plausible claim that a particular individual has particular knowledge, a particular motivation, or took a particular action."); *Desimone*, 924 A.2d at 943 ("I also reject [plaintiff's] contention that knowledge on the part of any one board member can be imputed to other board members as a result of their shared board or committee service."). Plaintiff has not pleaded facts showing (i) how or when each Defendant became aware of alleged patent infringement or unlawful acts; or (ii) what information each Defendant knew and deliberately ignored. Plaintiff does not even plausibly allege that certain Director Defendants were on the Board when the alleged misconduct occurred.[18] These pleading failures require dismissal as to the Individual Defendants.

## B.   Plaintiff Fails to State a Claim Even If Collective Pleading Were Permitted

To the extent that Plaintiff asserts duty of care claims against the Director Defendants (D.I. 28 ¶ 137), the claims fail because they are exculpated by DuPont's charter.[19]

---

[18] Plaintiff alleges that Messrs. Bodman and Dillon were directors through some point in *2011* (D.I. 28 ¶¶ 26–27), meaning they have no connection to alleged wrongdoing in 2012 related to the Missouri Litigation verdict or the settlement with Monsanto. (*Id.* ¶¶ 2, 95–101 (describing 2012 and 2013 conduct).) Plaintiff also alleges that Mr. Reilly served on the Board until sometime in 2012, but does not specify whether Mr. Reilly's tenure overlapped with the complained-of conduct in that year. (*Id.* ¶ 25.)

[19] To the extent Plaintiff alleges a duty of care claim against Ms. Kullman for actions purportedly taken in her capacity as Chief Executive Officer of the Company, this claim should also be dismissed outright. Plaintiff's Second Amended Complaint does not allege any failure by Ms. Kullman to act with due care or any specific action purportedly taken in bad faith. Instead, he has only alleged that Ms. Kullman was a "direct participant" (D.I. 28 ¶ 113) in the alleged conduct but fails to add a single fact to support the conclusory statement. That is not enough to state a claim. *See In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 573 (Bankr. D. Del. 2008)

To survive a motion to dismiss a breach of the duty of oversight claim under *Caremark*, Plaintiff is obligated to plead facts sufficient to demonstrate ***bad faith*** on the part of the Individual Defendants. *See Stone*, 911 A.2d at 370; *Disney*, 906 A.2d at 67. Mere statements that the Individual Defendants "breached their fiduciary duties consciously" (D.I. 28 ¶ 144), are insufficient to meet this bar. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("[M]ere restatements of the elements of [a] claim . . . are not entitled to the assumption of truth."). Instead, Plaintiff must plead facts ***showing*** that the Individual Defendants consciously failed to act in the face of red flags, or had knowledge of misconduct and disregarded it.[20] But as set forth above in Part I-C, the SAC contains no such facts. For example, Plaintiff does not allege that any Defendant determined that Monsanto's litigation position was correct and DuPont's was wrong (which is not the case), and nonetheless allowed DuPont to proceed. That Monsanto ultimately prevailed, or that DuPont was sanctioned, does not establish bad faith. *See, e.g.*, *Morrone ex rel. Arotech Corp. v. Erlich*, 2011 WL 1322085, at *6 (E.D.N.Y. Mar. 31, 2011) (negative litigation result insufficient to establish bad faith because "it is conceivable that [defendants] believed or were told that the litigation had a chance of success"); *see also Citigroup*, 964 A.2d at 124; *Desimone*, 924 A.2d at 940. Indeed, if a litigation loss—one subject to appeal no less—was sufficient to establish bad faith, there would be no protection for officers and directors when a company enters into litigation. Plaintiff's lawsuit is premised on the Individual Defendants having only two choices: (i) adopt the self-serving litigation position of

---

(dismissing duty of care claim where complaint failed to allege facts demonstrating that defendant "took part in the challenged conduct [and] failed to demonstrate the due care attendant to his particular office in doing so"); *Smith v. Van Gorkom*, 488 A.2d 858, 873 (Del. 1985).

[20] As discussed more fully above, the two other types of *Caremark* allegations that Delaware courts have recognized (a decision violating positive law, and a sustained or systematic failure to exercise oversight) do not apply. *See supra* footnotes 8 and 9 and accompanying text.

18

one of DuPont's main competitors and decline to defend the Company against a lawsuit, or (ii) allow the litigation to proceed and face personal liability in a derivative suit if the litigation ends unfavorably. (*E.g.*, D.I. 28 ¶ 85.) It is unsurprising that no Delaware court has allowed breach of fiduciary duty claims to proceed on such a theory.

Plaintiff's conclusory allegation that DuPont's corporate governance mechanism would have informed Defendants "that DuPont had no credible defense to Monsanto's claims" (*id.* ¶ 139) is also insufficient to establish bad faith conduct. "[L]iability is not measured by the aspirational standard established by the internal documents detailing a company's oversight system." *Citigroup*, 964 A.2d at 135. If it were, a plaintiff could state a breach of duty claim against the directors or officers of every company that has a corporate governance system whenever the company experienced a negative event. Again, that is not the law.

Plaintiff also attempts to tag the Individual Defendants with adverse decisions against Pioneer from over a decade ago, when at least seven of them were not even on the DuPont Board. (D.I. 28 ¶¶ 43–52, 56–58, 124–127.) These allegations prove nothing about how the Individual Defendants comported themselves in connection with the Monsanto Litigation—indeed, the license agreements at issue in the Monsanto Litigation were signed *after* those prior decisions. (*Id.* ¶ 56.)[21]

Finally, Plaintiff's mischaracterization of the Company's recent settlement with Monsanto also provides no support for his allegation that the Board acted in bad faith.[22] A Board's decision to accept a settlement is the classic type of decision afforded business judgment

---

[21] Judge Webber rejected exactly this "effort to inflame the Court's passion and to bias the Court against [DuPont]" in the December 2011 Order issuing sanctions. (D.I. 28 Ex. A at 5 n.3.)

[22] According to an article cited by Plaintiff, the settlement was a "win-win" for both companies. (D.I. 28 ¶ 100 n.5.)

19

protection.  *White*, 783 A.2d at 552-53.  As with each of the previous complaints, the SAC fails to state even a single fact indicative of bad faith.

## CONCLUSION

For the reasons stated above, the Second Amended Complaint should be dismissed.

DATED:  June 28, 2013                        Respectfully submitted,

**ABRAMS & BAYLISS LLP**

*/s/ Kevin G. Abrams*  (ID No. 2375)
Steven C. Hough (ID No. 5834)
20 Montchanin Road, Suite 200
Wilmington, DE  19807
Phone: (302) 778-1000
abrams@abramsbayliss.com

*Attorneys for Defendants Juliber, Crawford, R.H. Brown, Hewson, R.A. Brown, Collomb, Cutler, Reilly, Bodman & Dillon*

**WILLIAMS & CONNOLLY LLP**

David E. Kendall
Douglas R. Marvin
Ana C. Reyes

*Attorneys for Defendants Juliber, Crawford, R.H. Brown, Hewson, R.A. Brown, Collomb & Cutler*

**O'MELVENY & MYERS LLP**

Charles Bachman
Edward N. Moss

*Attorneys for Defendants Reilly, Bodman & Dillon*

**POTTER ANDERSON & CORROON LLP**

*/s/ Michael A. Pittenger*  (ID No. 3212)
Donald J. Wolfe, Jr. (ID No. 285)
Jennifer C. Wasson (ID No. 4933)
1313 North Market Street, 6th Floor
Wilmington, DE  19801
Phone: (302) 984-6136
mpittenger@potteranderson.com

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

Thomas J. Nolan
Lance E. Etcheverry
Edward P. Welch (ID No. 671)

*Attorneys for Nominal Defendant*

**MORRIS JAMES**

*/s/ Corinne Elise Amato* (ID No. 4982)
Lewis H. Lazarus (ID No. 2374)
Joseph R. Slights, III (ID No. 2559)
Thomas E. Hanson, Jr. (ID No. 4102)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801-1494
Phone: (302) 888-6970
CAmato@morrisjames.com

**CRAVATH, SWAINE & MOORE LLP**

Evan R. Chesler

*Attorneys for Defendant Kullman*

20