**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| ROBERT ZOMOLOSKY, derivatively on behalf of E.I. DU PONT DE NEMOURS AND COMPANY, | ) ) ) ) |
| Plaintiff, | ) Civil Action No. 13-94 (SLR) ) |
| - against - | ) ) |
| ELLEN KULLMAN, LOIS D. JULIBER, CURTIS J. CRAWFORD, RICHARD H. BROWN, MARILLYN A. HEWSON, ROBERT A. BROWN, BERTRAND P. COLLOMB, ALEXANDER M. CUTLER, WILLIAM K. REILLY, SAMUEL W. BODMAN, and JOHN T. DILLON | ) ) ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| E.I. DU PONT DE NEMOURS AND COMPANY | ) ) ) |
| Nominal Defendant. | ) ) ) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY IN SUPPORT OF DEFENDANTS' AND NOMINAL DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 23.1 AND DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

*Counsel listed on following page.*

DATED: August 23, 2013

Kevin G. Abrams (ID No. 2375)
Steven C. Hough (ID No. 5834)
**ABRAMS & BAYLISS LLP**
20 Montchanin Road, Suite 200
Wilmington, DE  19807
Phone: (302) 778-1000

*Attorneys for Defendants Juliber, Crawford, R.H.*
*Brown, Hewson, R.A. Brown, Collomb, Cutler,*
*Reilly, Bodman & Dillon*

David E. Kendall
Douglas R. Marvin
Ana C. Reyes
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000

*Attorneys for Defendants Juliber, Crawford, R.H.*
*Brown, Hewson, R.A. Brown, Collomb & Cutler*

Charles Bachman
Edward N. Moss
**O'MELVENY & MYERS LLP**
Times Square Tower
7 Times Square
New York, NY 10036
Phone: (212) 326-2000

*Attorneys for Defendants Reilly, Bodman &*
*Dillon*

Michael A. Pittenger (ID No. 3212)
Donald J. Wolfe, Jr. (ID No. 285)
Jennifer C. Wasson (ID No. 4933)
**POTTER ANDERSON CORROON LLP**
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19801
Phone: (302) 984-6136

Thomas J. Nolan
Lance E. Etcheverry
**SKADDEN, ARPS, SLATE, MEAGHER**
 **& FLOM LLP**
300 South Grand Ave, Suite 3400
Los Angeles, CA  90071
Phone: (213) 687-5000

Edward P. Welch (ID No. 671)
**SKADDEN, ARPS, SLATE, MEAGHER**
 **& FLOM LLP**
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Phone: (302) 651-3000

*Attorneys for Nominal Defendant*

Lewis H. Lazarus (ID No. 2374)
Joseph R. Slights, III (I.D. No. 2559)
Thomas E. Hanson, Jr. (I.D. No. 4102)
Corinne Elise Amato (I.D. No. 4982)
**MORRIS JAMES LLP**
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801-1494
Phone: (302) 888-6970

Evan R. Chesler
**CRAVATH, SWAINE & MOORE LLP**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Phone: (212) 474-1000

*Attorneys for Defendant Kullman*

## **TABLE OF CONTENTS**

TABLE OF CITATIONS ............................................................................................................ ii

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................2

    I.     PLAINTIFF HAS NOT PLED PARTICULARIZED FACTUAL
          ALLEGATIONS ...........................................................................................2

    II.    PLAINTIFF INCORRECTLY ASSERTS THAT PARTICULARIZED
          FACTS AND A DIRECTOR-BY-DIRECTOR INQUIRY ARE NOT
          REQUIRED ..................................................................................................4

    III.   THE *RALES* TEST GOVERNS THE DEMAND FUTILITY ANALYSIS ...........6

    IV.   PLAINTIFF HAS NOT PLED WITH PARTICULARITY THAT THE
          DIRECTORS HAVE A SUBSTANTIAL RISK OF LIABILITY ........................7

CONCLUSION .......................................................................................................................10

## TABLE OF CITATIONS

**CASES**                                                                                          **PAGE(S)**

*In re Abbott Depakote Shareholder Derivative Litigation*,
    2013 WL 2451152 (N.D. Ill. June 5, 2013)..................................................................7, 8

*Arbit v. Makrides*,
    2012 WL 4344317 (M.D. Fla. Sept. 21, 2012) .......................................................9

*Ausikaitis v. Kiani*,
    -- F. Supp. 2d --, 2013 WL 3753983 (D. Del. July 16, 2013) ...........................4, 5

*In re China Agritech, Inc. Shareholder Derivative Litigation*,
    2013 WL 2181514 (Del. Ch. May 21, 2013).........................................................6

*Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
    836 F.2d 173 (3d Cir. 1988) ...............................................................................1

*Desimone v. Barrows*,
    924 A.2d 908 (Del. Ch. 2007)............................................................................5

*In re Dow Chemical Company Derivative Litigation*,
    2010 WL 66769 (Del. Ch. Jan. 11, 2010).............................................................8

*Fagin v. Gilmartin*,
    432 F.3d 276 (3d Cir. 2005) ...............................................................................7

*Guttman v. Jen-Hsun Huang*,
    823 A.2d 492 (Del. Ch. 2003)............................................................................6

*In re Intel Corp. Derivative Litigation*,
    621 F. Supp. 2d 165 (D. Del. 2009) ....................................................................7

*Kanter v. Barella*,
    489 F.3d 170 3d Cir. 2007)..............................................................................7, 8

*In re Massey Energy Company*,
    2011 WL 2176479 (Del. Ch. May 31, 2011).........................................................6

*Parnes v. Bally Entertainment Corporation*,
    2001 WL 224774 (Del. Ch. Feb. 23, 2001), *aff'd*,
    788 A.2d 131 (Del. 2001) (TABLE) ..................................................................6, 7

*In re Pfizer Inc. Shareholder Derivative Litigation*,
    722 F. Supp. 2d 453 (S.D.N.Y. 2010) ..................................................................9

*Postorivo v. AG Paintball Holdings, Inc.*,
  2008 WL 553205 (Del. Ch. Feb. 29, 2008) ..........................................................................5

*Rales v. Blasband*,
  634 A.2d 927 (Del. 1993) ....................................................................................................8

*Saito v. McCall*,
  2004 WL 3029876 (Del. Ch. Dec. 20, 2004),
  *overruled in part*, *Lambrecht v. O'Neal*, 3 A.3d 277 (Del. 2010) ....................................5, 6

*Westmoreland Company Employee Retirement System v. Parkinson*,
  2013 U.S. App. LEXIS 17124 (7th Cir. Aug. 16, 2013) ......................................................7

*Wood v. Baum*,
  953 A.2d 136 (Del. 2008) ....................................................................................................1

**INTRODUCTION**[1]

The Second Amended Complaint ("SAC") (D.I. 28) still lacks the particularized factual allegations needed to establish demand futility.  Plaintiff tacitly concedes this by attempting to use his Opposition to replead through briefing, resting arguments on allegations that are nowhere to be found in his pleading.  This is not permitted,[2] and the tactic fails to defeat the Motion to Dismiss.  Moreover, even if they had been repleaded, these new allegations in the Opposition do not excuse Plaintiff's failure to make a demand on the Board before filing a derivative suit.

The SAC is still missing what Plaintiff needs.  The law requires Plaintiff to justify his failure to make a pre-suit demand by stating, with particularity, why the Board cannot carry out its mandate of determining the propriety of litigation on DuPont's behalf.  *See Wood v. Baum*, 953 A.2d 136, 140-41 (Del. 2008).  He has not done so.  Instead, he tries to re-litigate in this Court last year's Missouri Litigation and litigation from over a decade ago, involving DuPont's subsidiary, Pioneer.  There are, however, no facts alleged about those litigations that support Plaintiff's claims about DuPont's Board *today*.  The SAC lacks any details about the Board's purported knowledge of alleged misconduct, how it learned it, and what it did with it.  This is not surprising as no such facts exist.  Moreover, Plaintiff is not equipped with a competent understanding of the facts because in his rush to the courthouse, he decided to skip the step of investigating his speculative theories by utilizing a books-and-records inspection.[3]  There are

---

[1] Unless noted, internal citations and quotation marks are omitted and emphasis is added.

[2] "'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'"  *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted).

[3] Plaintiff argues that the admonishment his counsel received from the Delaware Court of Chancery in *South v. Baker* to conduct a section 220 investigation before filing derivative suits without making a demand is inapplicable in this case because, *after* commencing this derivative lawsuit, he hired a consultant to read litigation documents. (Opp'n at 12 n.11.)  Of course, that is not a substitute for a *pre-lawsuit* books-and-records investigation.  Moreover, the documents

1

costs to remaining deliberately ignorant about the facts.

Plaintiff is also wrong on the law.  He attempts to salvage his dearth of factual support by misinterpreting and misapplying non-binding case law to suggest that Rule 23.1's heightened pleading standards are met by claims that have "some merit" and are based on liberal inferences untethered to actual, particularized factual allegations.  That is not the law (nor, in any event, does the SAC have any merit).  Plaintiff's effort to distort his pleading burden is another tacit concession that the SAC fails to plead particularized facts sufficient to excuse demand.

## ARGUMENT

## I.   PLAINTIFF HAS NOT PLED PARTICULARIZED FACTUAL ALLEGATIONS

Rule 23.1 requires Plaintiff to plead "with particularity" the reasons justifying his failure to make a pre-suit demand on the Board.  In a transparent attempt to save the SAC from itself, the Opposition asserts numerous propositions that are unaccompanied by citations to the SAC. The missing citations are no mere oversight; the "facts" asserted in the Opposition are either not particularly alleged in the SAC or absent from the SAC altogether.  For example:

- There are *no particularized factual allegations* in the SAC to support Plaintiff's conclusory assertion that the "DuPont Board acquiesced in the infringement and refused to halt it, despite knowledge that DuPont was not within its legal rights to behave as it did."  (Opp'n at 1.)  This is a conclusion, not a pleaded fact.

- There are *no particularized factual allegations* in the SAC to support the following unfounded assertions: patent infringement was a "business strategy" of DuPont and its Board (Opp'n at 2); the Board "knowingly acquiesced to DuPont's patent infringement and systematic pattern of deceitful behavior" (*Id.* at 8), and "permitted top management to pursue a policy of 'infringe first, litigate later'" (*Id.* at 7-8); the infringement was "an attempt to 'game the patent system,'" and "[a]ll of the directors knew what the game was and that DuPont had played it before"

---

from the Missouri Litigation do not concern communications with the Board or its knowledge or alleged acquiescence in management's purported conduct.  Those are the only relevant questions at this stage of this litigation, and Plaintiff's failure to cite to any evidence from the Missouri Litigation that bears on his allegations against the ***Board*** is dispositive.

(*Id.* at 6); and patent infringement was "part of the DuPont corporate culture, which was completely acceptable to the Director Defendants" (*Id.* at 8).  Again, these are unfounded assertions, not pleaded facts.

- There are *no particularized factual allegations* to support Plaintiff's claims that the Board was aware "that DuPont had begun using Monsanto's technology without permission" and "there was no reason for the Board to believe that DuPont was within its rights[.]" (*Id.* at 3.)  Plaintiff concludes without a single factual allegation that "[t]he Director Defendants knew that DuPont had not secured extraordinarily valuable stacking rights from Monsanto and that Monsanto's complaints were valid." (*Id.* at 15.)  This is pure speculation and accusation untethered from anything that can be called a pleaded "fact."

Further, the Opposition is factually misguided.  This is not surprising, as Plaintiff refused to first investigate his speculative claims through a books-and-records inspection.  For example:

- Plaintiff states that "DuPont entered into a disadvantageous $1.75 billion settlement with Monsanto" that "is one-sided and materially damages DuPont" (*Id.* at 1, 11), as DuPont's trial expert testified that the stacking rights were worth "as little as $7 million." (*Id.* at 7.)  Plaintiff posits a false analogy more tenuous than comparing apples to oranges.  DuPont's damages expert testified about the theorized value of research-only (non-commercial) stacking rights involving Roundup Ready 1 and Optimum GAT—which is irrelevant to the value of the March 25, 2013 licenses for traits and rights not at issue in the Missouri Litigation (*i.e.*, Monsanto's new Genuity Roundup Ready 2 Yield herbicide tolerance trait, its new dicamba herbicide tolerance trait, and new regulatory rights covering five valuable transgenic traits used by DuPont Pioneer).

- Relying solely on the mere fact that DuPont's directors sign its public SEC filings, which mention Pioneer, Plaintiff argues that "the Board knew full well that 'stacking' Monsanto's technology was not permitted, as it had just in 2007 negotiated a $725 million license to use Monsanto stacking technology in corn seed." (*Id.* at 3 & n.4, 4, 10.)  The Missouri Litigation concerned **soybeans**, **not corn**.  Soybeans and corn are different and the trait licenses relating to them are different such that alleged knowledge of a corn license would have no bearing on soybean stacking rights.  Plaintiff's baseless reliance in its Opposition on the 2007 YieldGard® MON810 insect resistance license for **corn** is another illustration of baseless arguments that presumably could have been avoided had Plaintiff conducted an investigation of his speculative theories.  This sort of demonstratively wrong argument cannot support excusal of demand.

3

- Plaintiff argues that "[t]he Board could not have had any information showing that DuPont was acting within its contractual rights."[4] (Opp'n at 10.)  There are no particularized factual allegations in the SAC (or citations in the Opposition) to support this position; nor can there be.  Indeed, the Missouri Litigation and other publicly available documents on their face reveal that DuPont hired competent outside counsel (including David Boies, Donald Flexner and James Denvir of Boies, Schiller & Flexner, and Leora Ben-Ami of Kirkland & Ellis) who, in turn, advanced numerous legal defenses and counterclaims that *survived summary judgment motions*.  Nevertheless, Plaintiff baselessly proclaims that the Board "did not obtain an independent legal opinion that DuPont had the rights it claimed; no such opinion was possible under the circumstances . . . [and] no independent patent attorney opinion was obtained as to [patent] validity." (*Id.* at 15-16.)

## II.   PLAINTIFF INCORRECTLY ASSERTS THAT PARTICULARIZED FACTS AND A DIRECTOR-BY-DIRECTOR INQUIRY ARE NOT REQUIRED

To attempt to lower his burden and excuse the SAC's allegations against the Board as a whole, Plaintiff incorrectly asserts that he need not plead particularized director-specific allegations.  According to Plaintiff, the requirement applies only in "extreme circumstances" and "a very narrow category of cases in which there is no indication that the directors knew of any wrongdoing prior to being sued." (Opp'n at 5-6.)  Plaintiff characterizes this Court's opinion in *Ausikaitis v. Kiani*, 2013 WL 3753983 (D. Del. July 16, 2013), as holding that when "a matter surely did come to the Board's attention and involved important company operations, a director-by-director inquiry is not required" and that a plaintiff may "infer[] directors' knowledge of wrongdoing and their bad faith from their alleged conduct[.]" (Opp'n at 5-6.)  This is wrong.

---

[4] Plaintiff similarly argues that the Board allowed DuPont to assert "without a shred of evidence" that it had obtained free use of Monsanto's patents and that the Board now contends the stacking rights were free.  (Opp'n at 2, 4.)  Plaintiff misinterprets the entire legal dispute upon which the SAC purports to rest.  The contract-based claims that were at issue in the Missouri Litigation did not concern whether DuPont was entitled to use the Roundup Ready technology *without payment and for free*.  Rather, the question was whether DuPont *had* already "paid" for those rights through a license that permitted stacking.  DuPont argued that it had and, alternatively, that if the license was enforced based on Monsanto's interpretation that stacking was not permitted, then Monsanto was violating anti-trust laws and regulations.

4

In *Ausikaitis*, which concerned allegedly improper stock option grants awarded to six directors by a three-member committee of directors, the Court found that the "[p]laintiff at bar has pled with factual particularity that each of the directors received at least some of the challenged grants."   2013 WL 3753983, at *9.   Nowhere did the Court announce the rules professed in the Opposition, or reject the principle that "a derivative complaint must plead facts *specific* to *each director*, demonstrating that at least half of them could not have exercised disinterested business judgment in responding to a demand."   *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007) (citing *Beam v. Stewart*, 845 A.2d 1040, 1050-51 (Del. 2004)); *Postorivo v. AG Paintball Hldgs. Inc.*, 2008 WL 553205, at *6-7 (Del. Ch. Feb. 29, 2008) (dismissing complaint under both *Aronson* and *Rales* where allegations were "nothing close to the fact intensive, director-by-director analysis required to meet the pleading standard for demand futility.").   Rather, the Court found that the *Ausikaitis* plaintiff had, in fact, pled particularized facts (*i.e.*, specific dates and amounts of the challenged self-awarded stock option grants) for a majority of the Board by alleging their personal interest in a transaction in which they granted themselves stock options.   Here, however, Plaintiff has not pled *any* particularized facts about *any* director, much less a majority of directors.[5]   Indeed, despite three attempts, the only progress Plaintiff has made in his pleadings is to drop three of the eleven DuPont directors as defendants—effectively conceding they are disinterested and independent, and not under

---

[5] For this reason, Plaintiff's reliance on *Saito v. McCall*, 2004 WL 3029876 (Del. Ch. Dec. 20, 2004), *overruled in part*, *Lambrecht v. O'Neal*, 3 A.3d 277 (Del. 2010), is also misplaced. Plaintiff posits that the *Saito* court accepted imputation to the Board of four directors' knowledge.   (Opp'n at 6 n.9.)   However, unlike here, the *Saito* plaintiffs were found to have alleged the necessary well-pleaded particularized facts that the four directors knew of the alleged accounting irregularities. *Saito*, 2004 WL 3029876, at *7 n.68.   Indeed, the *Saito* court recounted that it had previously dismissed multiple iterations of the plaintiffs' claims for being "the product of a race to the courthouse," being "generously laden with conclusory allegations," and "fail[ing] to make demand pursuant" to Rule 23.1, and had "encouraged plaintiffs to use 'the tools at hand' to 'develop additional particularized facts.'"   *Id*. at *1 (citation omitted).

control of any other director.[6]

## III.   THE *RALES* TEST GOVERNS THE DEMAND FUTILITY ANALYSIS

Plaintiff also attempts to avoid the applicable *Rales* test by erroneously suggesting that "[w]here, as here, a complaint is based at least in part on decisions made by a Board, the relevant test for determining demand futility is that set forth in *Aronson*[.]" (Opp'n at 12.)  Plaintiff incorrectly attempts to recharacterize the board's inaction as action.[7]  To do so, Plaintiff takes a comment out of context from a recent Delaware Court of Chancery decision (*see id.* n.13),[8] and

---

[6] Contrary to Plaintiff's suggestion, *Ausikaitis* does not hold that demand futility can rest on mere inferences unsupported by particularized factual allegations.  Rather, because the *Ausikaitis* plaintiff had pled *with factual particularity* regarding stock options granted contrary to the company's compensation plan, the Court concluded that "taking plaintiff's well-pled allegations as true at the motion to dismiss stage, plaintiff has raised a reasonable inference that the directors knowingly and intentionally engaged in a pattern and practice of opportunistically timing option grants." 2013 WL 3753983, at *10.  Similarly, in *In re Massey Energy Co.*, 2011 WL 2176479 (Del. Ch. May 31, 2011), unlike here, plaintiffs alleged a plethora of particularized factual allegations that permitted inferences of director misconduct, *see id.* at 21, and in *Saito*, plaintiffs alleged particularized factual allegations in order to partially survive a motion to dismiss, but only after examining corporate books and records.  *Saito*, 2004 WL 3029876, at *1.

[7] As discussed in Defendants' opening memorandum, the only allegations potentially subject to the *Aronson* test are "the Board's approval of the DuPont's business decision to enter into licensing agreements with Monsanto," and "the Board's approval of Ms. Kullman's compensation…." (Memo. at 15 & n.16.)  However, Plaintiff concedes that the decision to resolve the Missouri Litigation and enter into the license agreements was not itself wrongful (Opp'n at 3 n.6), and only mentions Ms. Kullman's compensation in passing (*id.* at 19).

[8] Plaintiff's cited authority involved an actual investigation and specific decision not to act rather than mere inaction: "[T]he Complaint challenges what it describes as 'a sham 'investigation' the sole purpose of which was to cover up defendants' breaches of fiduciary duties. . . .' The Special Committee decided not to take any action with respect to the Audit Committee's termination of two successive outside auditors and the allegations made by Ernst & Young." *In re China Agritech, Inc. S'holder Derivative Litig.*, 2013 WL 2181514, at *23 (Del. Ch. May 21, 2013). The SAC sets forth no similar particularized factual allegations.  Indeed, Plaintiff neither pleads nor cites to any particularized factual allegations to support the contention that the Board deliberately acted in bad faith and acted with the necessary scienter to overcome the Business Judgment Rule and the exculpatory clause in the DuPont charter.  *See Guttman v. Huang*, 823 A.2d 492, 502 (Del. Ch. 2003) (a substantial likelihood of personal liability requires plaintiffs to plead a non-exculpated claim); *Parnes v. Bally Entm't Corp.*, 2001 WL 224774, at *9 n.26 (Del.

6

relies most heavily on a Northern District of Illinois case whose approach has been rejected by the Third Circuit (*see* Opp'n at 12 n.14).[9]  As more fully set forth in Defendants' opening memorandum, with the minor exception of Ms. Kullman's compensation, the SAC asserts only *Caremark* claims to be assessed under *Rales*.

## IV.  PLAINTIFF HAS NOT PLED WITH PARTICULARITY THAT THE DIRECTORS HAVE A SUBSTANTIAL RISK OF LIABILITY

Plaintiff argues that "[t]o show that the directors face a 'substantial risk of liability,' a plaintiff does not have to demonstrate a reasonable probability of success on the claim."  (*Id.* at 5, 13.)  As Plaintiff appears to define it, the ***heightened*** pleading standard applicable to demand futility is equivalent to the *Twombly* plausibility standard.  That is clearly wrong.  *See Kanter v.*

---

Ch. Feb. 23, 2001) (where majority of directors "'are independent or outside directors receiving no income . . . other than usual directors' fees, the presumption of good faith is heightened'").

[9] Plaintiff cites to *Abbott*, a N.D. Illinois decision applying Illinois law and following a Seventh Circuit decision providing that "if a plaintiff sufficiently alleges that a majority of the directors...knew the company was committing illegal acts and did nothing to remedy the situation, demand futility should be analyzed under the standard set forth in *Aronson*."  *In re Abbott Depakote S'holder Derivative Litig.*, 2013 WL 2451152, at *4, *6 (N.D. Ill. June 5, 2013).  The Third Circuit has rejected the reasoning underlying this Seventh Circuit case, *see Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005), as recognized in this District, *see In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d 165, 173 (D. Del. 2009).

Similarly, as supplemental authority (D.I. 36), Plaintiff asserts that *Westmoreland Co. Empl. Ret. Sys. v. Parkinson*, 2013 U.S. App. LEXIS 17124 (7th Cir. Aug. 16, 2013), which applies *Abbott*, supports his claim of demand futility.  But there, *contrary to Delaware law and Third Circuit precedent*, the Seventh Circuit applied the *Aronson* test instead of the *Rales* test.  *Id.* at *27 ("Because the particularized facts that Westmoreland has furnished cast a reasonable doubt that the defendants' conduct was the product of a valid exercise of business judgment, *Aronson*, we reverse and remand for further proceedings."). Moreover, unlike here, the *Westmoreland* plaintiff was found to have pleaded particularized facts *about the conduct of the board*,  including specific instances such as notice of a federal consent decree, board-wide discussions 28 times on the alleged detrimental conduct, Audit and Public Policy committee meetings 32 times on the subject, regular updates on discussions with the FDA and agency officials, notice of repeated warnings of non-compliance with the consent decree, and that the board "consciously flouted" the FDA and "steered" the course.  *Id.* at *4-5, 16, 19-20.  Contrary to Plaintiff's suggestion, the Seventh Circuit did not hold that such particularized facts were not necessary, but the exact opposite.  *Id.* at *11 ("[Rule] 23.1 requires a plaintiff bringing a shareholder derivative action to state with particularity . . . .").

*Barella*, 489 F.3d 170, 175-76 (3d Cir. 2007) ("pleading demand futility in shareholder derivative suits" is one of "three notable exceptions to notice pleading that mandate a heightened standard requiring that facts be pleaded with particularity…").  In attempting to cloud the application of the "substantial likelihood of liability" test, *Rales v. Blasband*, 634 A.2d 927, 935 (Del. 1993), Plaintiff ignores that the purpose of the particularity requirement is to ensure that only derivative actions supported by a reasonable factual basis proceed.  *See In re Dow Chem. Co. Derivative Litig.*, 2010 WL 66769, at *2 (Del. Ch. Jan. 11, 2010).

Unable to support his speculative assertions with particularized factual allegations, Plaintiff attempts to construct an argument based on alleged "recidivism."  Plaintiff asserts that the Board has a substantial likelihood of liability because it must have known the Optimum GAT/Roundup Ready stacking constituted unlawful patent infringement.  It purportedly must have known this because DuPont's subsidiary Pioneer was involved in patent infringement and breach-of-contract litigation with Monsanto during the time that DuPont acquired Pioneer in the late 1990s.  (Opp'n at 15.)  This is nonsense and ignores the fact that the disputed license in the Missouri Litigation did not even exist until April 1, 2002—years after the acquisition.

Moreover, the case law into which Plaintiff attempts to squeeze his "recidivism" allegations is distinctly different.  For example, there is no similarity between this case and *In re Abbott*.  There, the corporation had been caught in an off-labeling pharmaceutical marketing scheme in 2003 and in 2012, and entered into settlement agreements with the federal government.  *Abbott*, 2013 WL 2451152, at *3.  Shareholders were able to demonstrate demand futility by incorporating into their complaint the detailed admissions in those settlement agreements, thereby establishing that a single, uninterrupted scheme continued for a decade after it was brought to the Board's attention and despite the Board's receipt of DOJ subpoenas over that time.  *Id.* at *7-8, 10.  Here, there are no particularized factual allegations connecting the

8

Pioneer-Monsanto litigation in the 1990s with the Missouri Litigation in 2012. Plaintiff's attempted "continuing conduct" theory is supported by no facts—much less particularized ones that reach the Board.[10] Repetitively asserting, without support, that DuPont installed an "infringe first, litigate later" business strategy does not create a particularized factual allegation.[11]

Likewise, Plaintiff is wrong that *Arbit v. Makrides*, 2012 WL 4344317 (M.D. Fla. Sept. 21, 2012), holds that demand is excused because of a generalized allegation of multiple infringements. The *Arbit* court did not base its ruling on any sort of pattern but rather found that the *Arbit* plaintiffs had "alleged sufficient particularized factual allegations," *id.* at *4, with respect to several independent matters, including the knowing failure to consult a patent attorney after receipt of notice that technology being purchased infringed another company's patent. Plaintiff's attempt to shoehorn his case into *Arbit* fails. Plaintiff has not alleged the particularized factual allegations present in *Arbit*.[12] Moreover, Plaintiff's conclusory guess that the Board and DuPont did not consult an independent patent attorney is baseless. As discussed

---

[10] Moreover, the prior soybean litigation was about whether the form of merger between DuPont and Pioneer in 1999 constituted a prohibited assignment of the then-existing Roundup Ready 1 license—a novel issue under Iowa law at that time.

[11] Plaintiff asserts that the Board knew stacking was illegal because Monsanto alleged that it was so, and because Monsanto's "great credibility" in alleging patent infringement was proven in previous cases. (Opp'n at 3, 4.) Not only does Plaintiff fail to provide factual allegations to support such assertions, but his statements are unsustainable. Nothing in the resolution of the Pioneer-Monsanto litigation from the 1990s established that DuPont should credit future allegations of breach of contract and patent infringement from Monsanto, or reject the advice of its counsel in the face of Monsanto allegations. (Moreover, had Plaintiff investigated his baseless assertion that the Board should have afforded "great credibility" to any Monsanto allegations, he would have discovered that Monsanto filed two other cases against DuPont on the date it commenced the Missouri Litigation—and Monsanto lost both of those cases.)

[12] *In re Pfizer Inc. Shareholder Derivative Litigation*, 722 F. Supp. 2d 453 (S.D.N.Y. 2010) also provides no support to Plaintiff here. The SAC does not allege anything like the "extensive paper trail" including inspections, government warning letters, notice in the press, and the largest civil fine ever imposed by the federal Food and Drug Administration, or alleged wrongdoing of "substantial magnitude and duration" that occurred in the face of the *Pfizer* directors' express and formal undertakings to prevent the alleged misconduct. *See id.* at 459-60, 462.

9

above, DuPont hired competent counsel:  Kirkland & Ellis and Boies, Schiller & Flexner.

## CONCLUSION

For the reasons stated above, the Second Amended Complaint should be dismissed.  All Defendants move to dismiss because Plaintiff has failed to meet his burden under Rule 23.1.

The Individual Defendants move additionally to dismiss for failure to state a claim under Rule 12(b)(6) because Plaintiff's allegations do not state a plausible claim that he is entitled to relief.  Notably, the Opposition fails to even contest the Individual Defendants' arguments.

DATED:  August 23, 2013

Respectfully submitted,

**ABRAMS & BAYLISS LLP**
/s/ Steven C. Hough   (ID No. 5834)
Kevin G. Abrams (ID No. 2375)
20 Montchanin Road, Suite 200
Wilmington, DE  19807
Phone: (302) 778-1000

*Attorneys for Defendants Juliber, Crawford, R.H. Brown, Hewson, R.A. Brown, Collomb, Cutler, Reilly, Bodman & Dillon*

**WILLIAMS & CONNOLLY LLP**
David E. Kendall
Douglas R. Marvin
Ana C. Reyes

*Attorneys for Defendants Juliber, Crawford, R.H. Brown, Hewson, R.A. Brown, Collomb & Cutler*

**O'MELVENY & MYERS LLP**
Charles Bachman
Edward N. Moss

*Attorneys for Defendants Reilly, Bodman & Dillon*

**POTTER ANDERSON CORROON LLP**
/s/ Jennifer C. Wasson   (ID No. 4933)
Donald J. Wolfe, Jr. (ID No. 285)
Michael A. Pittenger (ID No. 3212)
1313 North Market Street, 6th Floor
Wilmington, DE  19801
Phone: (302) 984-6136
mpittenger@potteranderson.com

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Thomas J. Nolan
Lance E. Etcheverry
Edward P. Welch (ID No. 671)

*Attorneys for Nominal Defendant*

**MORRIS JAMES LLP**
/s/ Lewis H. Lazarus   (ID No. 2374)
Joseph R. Slights, III (ID No. 2559)
Thomas E. Hanson, Jr. (ID No. 4102)
Corinne Elise Amato (ID No. 4982)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801-1494
Phone: (302) 888-6970
llazarus@morrisjames.com

**CRAVATH, SWAINE & MOORE LLP**
Evan R. Chesler

*Attorneys for Defendant Kullman*

1119914

10